UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| ROBERT BOYKO and MARIAN CLARK, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> PARKVIEW HOSPITAL INC., a/k/a ) <br> PARKVIEW HOSPITAL; DANIEL A. ) <br> WHITELEY (in his official capacity); and ) <br> THE DEPARTMENT OF CHILD SERVICES ) <br> (in its official capacity); ) <br> ) <br> Defendants. ) | No: 1:10 CV 260 |

## OPINION and ORDER

**I.   BACKGROUND** [1]

On August 2, 2008, plaintiff Marian Clark arrived at Parkview Hospital in Fort Wayne, Indiana, in labor. She was accompanied by her husband, plaintiff Robert Boyko. After the baby was delivered, Parkview employees performed a non-routine[2] drug test on Clark, which came back positive for opiates and phencyclidine, a controlled substance commonly abbreviated as "PCP." The newborn was also tested, but did not test positive for any drugs. Parkview forwarded the test results to Indiana's Department

---

[1] The following facts are undisputed, unless otherwise designated.

[2] The parties dispute whether Clark consented to the drug test. The rationale for the drug test is also disputed. While Parkview claims it chose to perform the test because Clark had received no prenatal health care and was behaving strangely, plaintiffs contend that Parkview targeted Clark for a drug test because she was on Medicare.

of Child Services ("DCS"). Parkview maintains that it was required to do so by INDIANA CODE § 31-33-5-1, which states that "any individual who has reason to believe that a child is a victim of child abuse or neglect shall make a report [to DCS] as required by this article."

On August 6, 2008, DCS and its family case manager, Daniel A. Whiteley (together, the "State Defendants"), initiated Child in Need of Services ("CHINS") proceedings in Indiana state court, seeking to remove the newborn baby and plaintiffs' three other children from plaintiffs' custody. Plaintiffs allege that during the state court proceedings, Whitley fabricated evidence in a report to the court, claiming that the baby had tested positive for drugs, in order to effectuate removal of the children from plaintiffs' home. That same day, the state court issued a detention order directing DCS to move the children out of plaintiffs' home and into the home of the children's aunt and uncle. Whiteley effectuated the order by moving the children.

On August 8, 2008, Clark and Boyko underwent additional drug testing, and neither tested positive for any drugs. It appears undisputed that Clark's initial drug test resulted in a "false positive"; the record further suggests that the test used on Clark was defective and was later recalled by the manufacturer. The children were not returned to plaintiffs until August 25, 2008. On September 4, 2008, the CHINS case against plaintiffs was dismissed.

2

Plaintiffs sued Parkview, DCS, and Whiteley in his individual capacity, alleging violations of 42 U.S.C. 1983, which permits lawsuits against persons acting under color of law for violations of constitutional rights, and 42 U.S.C. § 1985, which prohibits persons from engaging in a conspiracy to deprive another of his or her civil rights. (DE ## 1, 33.) The State Defendants moved for judgment on the pleadings (DE # 46), and later filed a motion for summary judgment (DE # 68).[3] Parkview also filed its own motion for summary judgment. (DE # 36.) Plaintiffs responded to the State Defendants' motion for judgment on the pleadings (DE # 76) and to both motions for summary judgment (DE # 78). The State Defendants replied in support of its motion for summary judgment (DE # 82), as did Parkview (DE # 79). Parkview also filed a motion to strike portions of the affidavits submitted by plaintiffs in response to Parkview's motion for summary judgment (DE # 80), and plaintiffs responded (DE # 85). The aforementioned motions for summary judgment are fully briefed and ripe for ruling.

## II.     LEGAL STANDARD

FEDERAL RULE OF CIVIL PROCEDURE 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S.

---

[3] Because the State Defendants' motion for summary judgment encompassed the arguments made in the prior motion for judgment on the pleadings, the motion for judgment on the pleadings will be denied as duplicative.

317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.,* 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

"[T]he burden on the moving party may be discharged by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325. Once the moving party has met his burden, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986); *Palmer v. Marion County,* 327 F.3d 588, 595 (7th Cir. 2003) (citing *Celotex,* 477 U.S. at 324).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir. 1994). On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder. *Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (citing *Anderson,* 477 U.S. at 255). In viewing the facts presented on a motion for summary judgment, the court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Chmiel v. JC Penney Life Ins. Co.,* 158 F.3d

4

966, 968 (7th Cir. 1998); *Doe,* 42 F.3d at 443. Importantly, the court is "not required to draw *every* conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M., v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (emphasis added).

### III.   DISCUSSION

#### A.   Parkview's Motion for Summary Judgment

##### 1.   Plaintiff's Section 1983 Claim

Parkview has moved for summary judgment on plaintiffs' Section 1983 claim because Parkview claims it is not a state actor subject to Section 1983 liability. There appears to be no dispute that Parkview is not a government institution, but rather a private hospital. When a plaintiff brings a Section 1983 claim against such a defendant, the plaintiff must show that the private entity acted under the color of state law. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 822-23 (7th Cir. 2009); *see also Parratt v. Taylor,* 451 U.S. 527, 535 (1981). "This requirement is an important statutory element because it sets the line of demarcation between those matters that are properly federal and those matters that must be left to the remedies of state tort law." *Rodriguez,* 577 F.3d at 823. "The purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982).

5

Courts have long acknowledged the difficulty of determining whether a private entity has acted under the color of state law. As the Second Circuit has noted, this determination constitutes "one of the more slippery and troublesome areas of civil rights litigation." *Int'l Soc'y for Krishna Consciousness v. Air Canada*, 727 F.2d 253, 255 (2d Cir. 1984) (quotation marks omitted). A private actor might engage in state action if he and the state are engaged in a symbiotic relationship (that is, a long term, intimate association), if the state commanded or encouraged the actor to take certain actions, if the private actor was performing a traditionally public function, or if the state and the private actor jointly participated in an act. *Rodriguez*, 577 F.3d at 823-24. At the heart of all of these scenarios is the search for a "close nexus between the State and the challenged action" such that the challenged action "may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).

It is one's function, not one's title or term of employment, that determines whether one's actions can be fairly attributed to the state. *West v. Atkins*, 487 U.S. 42, 55-56 (1988). Accordingly, the court must consider each of Parkview's allegedly improper acts and determine whether it was functioning as a state actor or a private actor when it committed each act. In this case, plaintiffs have argued that Parkview: (1) drug-tested Clark without Clark's permission; (2) used a bad batch of drug tests when testing Clark; (3) failed to re-test Clark in a timely manner; and (4) reported the drug test results to DCS.

6

The record contains no indication that Parkview should be considered a state actor with regard to the first three of these allegations because there is simply no link between Parkview and the state actors in this case – the State Defendants. There is no evidence that the State and Parkview were engaged in a symbiotic relationship with regard to drug-testing of new mothers in the hospital, either in the decision to test certain mothers for drugs, the use of a particular drug test, or in re-testing procedures. Further, drug-testing new mothers after childbirth has never fallen within the province of the government, so it cannot be said that Parkview engaged in a traditionally public function by testing or re-testing Clark or by choosing a certain test to use. There is also no evidence that the State Defendants commanded or encouraged Parkview to test certain (or any) new mothers for drugs, dictated the conditions under which the tests should or should not be performed, or required that certain tests be used.

Plaintiffs allege that Parkview and the State Defendants were involved in a conspiracy to violate plaintiffs' constitutional rights, making Parkview liable as a state actor for purposes of Section 1983. However, a Section 1983 conspiracy requires an agreement or understanding amongst the conspirators, *Loubser v. Thacker*, 440 F.3d 439, 445 (7th Cir. 2006), and the record in this case contains no evidence of any agreement or understanding amongst Parkview and the State Defendants with regard to the drug-testing of new mothers. Without some connection or "nexus" between the State Defendants and the challenged actions, the court cannot conclude that Parkview was

acting as the State when it tested Clark, failed to timely re-test Clark, or chose to use a particular drug test. Thus, none of these actions constituted state action for purposes of plaintiffs' Section 1983 claim.

Plaintiff's remaining allegation is that Parkview is a state actor because it complied with the mandatory reporting requirements set forth by the laws of the State of Indiana, essentially acting as a "snitch." (DE # 78 at 10.) However, the fact that a private actor is required to follow the laws of a state does not mean that the actor functions as the state by complying. *Jackson,* 419 U.S. at 350 ("The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment."); *Spencer v. Lee,* 864 F.2d 1376, 1381 (7th Cir. 1989) (private hospital and physician were not state actors when they involuntary committed mentally disturbed person as permitted by state law). If this were the case, then any person complying with state laws would be a "state actor" for purposes of Section 1983 litigation. The real inquiry is "whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself." *Jackson,* 419 U.S. at 351. Based on the record in this case, the links between the State and Parkview are virtually non-existent and tenuous. The State of Indiana requires everyone, including Parkview, to report incidents of suspected child abuse to DCS. IND.

8

CODE § 31-33-5-1. Parkview is not a state actor under Section 1983 simply for complying with this law.

Because none of Parkview's allegedly improper acts constituted state action, plaintiffs have failed to establish that Parkview acted under color of state law, an essential element of their Section 1983 claim. *See Rodriguez*, 577 F.3d at 822-23. Accordingly, summary judgment for Parkview on that claim is appropriate.

### 2. *Plaintiffs' Section 1985 Claim*

Plaintiffs have also sued Parkview under Section 1985(3), which prohibits two or more persons from conspiring to deprive another of their constitutional rights. 42 U.S.C. § 1985(3). Parkview has moved for summary judgment on plaintiffs' Section 1985(3) claim because plaintiffs lack evidence of a conspiracy or agreement to deprive plaintiffs of their civil rights. Indeed, the minimum ingredient of a Section 1985 conspiracy is an agreement to commit some future unlawful act in pursuit of a joint objective, *Redwood v. Dobson,* 476 F.3d 462, 466 (7th Cir. 2007), and plaintiffs have pointed to no evidence of an agreement between Parkview and the State Defendants. Accordingly, summary judgment for Parkview is appropriate on this claim.

### 3. *Parkview's Motion to Strike*

Parkview moved to strike portions of the affidavits of Boyko and Clark, submitted by plaintiffs in response to Parkview's motion for summary judgment. (DE

# 80.) The contents of the affidavits are not relevant to the issues analyzed above, so the motion to strike is denied as moot.

### B. State Defendants' Motion for Summary Judgment

#### 1. *Plaintiffs' Suit is not Barred by the Rooker-Feldman Doctrine*

The State Defendants argue that plaintiffs' complaint is barred by the *Rooker-Feldman* doctrine, depriving this court of jurisdiction over any of plaintiffs' claims, because plaintiffs essentially challenge the state court's decision to remove their children from their home. Because this argument is jurisdictional in nature, the court addresses it first.

The *Rooker-Feldman* doctrine derives its name from two decisions of the United States Supreme Court, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). The doctrine precludes lower federal court jurisdiction over claims seeking review of state court judgments. *Brokaw v. Weaver,* 305 F.3d 660, 664 (7th Cir. 2002). The doctrine "is not limited to just those claims alleging that the state court judgment itself caused the federal plaintiff's injury; the doctrine also precludes federal jurisdiction over claims 'inextricably intertwined' with a state court determination." *Remer v. Burlington Area Sch. Dist.,* 205 F.3d 990, 996 (7th Cir 2000) (quoting *Feldman,* 460 U.S. at 483-84 n.16). As the Seventh Circuit has noted, "it can be difficult to discern which claims are and which claims are not 'inextricably intertwined' with a state judgment." *Id.* The pivotal inquiry in applying the doctrine is

whether the federal plaintiff seeks to set aside a state court judgment or whether he is presenting an independent claim. *Id.*

In *A.D. Brokaw v. Weaver,* 305 F.3d 660 (7th Cir. 2002), the plaintiff filed suit in federal court against various county and state officials and agencies, including caseworkers employed by a state child and family services agency, for conspiring to remove her from her parents' home as a child through state court judicial proceedings based on false allegations of child neglect. *Id.* at 622. The Seventh Circuit held that the *Rooker-Feldman* doctrine did not bar the plaintiff's suit because she "was not claiming that the decision of the state court was incorrect or that the decision violated her constitutional rights; rather, she [was] alleging that the people involved in the decision to forcibly remove her from her home and her parents . . . violated her constitutional rights, independent of the state court decision." *Id.* at 665.

The logic of *Weaver* applies in this case. Plaintiffs' suit does not seek review of a state court judgment. Instead, like the plaintiff in *Weaver,* plaintiffs allege that the improper actions of the State Defendants resulted in the denial of their constitutional rights. Accordingly, the *Rooker-Feldman* doctrine does not bar plaintiffs' lawsuit.

### 2. *DCS is Immune from Plaintiffs' Claims*

DCS argues, and plaintiffs concede, that DCS is immune from plaintiff's constitutional claims under the Eleventh Amendment of the United States Constitution. Accordingly, summary judgment for DCS is granted as to those claims.

### 3. *Whiteley is Immune from Plaintiffs' Claims*

Whiteley argues that he is protected by absolute judicial immunity from plaintiffs' constitutional claims. The Supreme Court has recognized the defense of absolute immunity from civil rights suits in several well-established contexts involving the judicial process. For example, a judge acting in his judicial capacity is absolutely immune from such suits, *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978), a prosecutor is absolutely immune for activities which are "intimately associated with the judicial process" such as initiating and pursuing a criminal prosecution, *Imbler v. Pachtman,* 424 U.S. 409, 430 (1976), and witnesses, including public officials and private citizens, are immune from civil damages based upon their testimony. *Briscoe v. La Hue,* 460 U.S. 325, 341, 345-46 (1983).

The rationale for according absolute immunity is to allow participants in the judicial system the latitude to perform their functions absent the threat of retaliatory civil rights litigation. The Supreme Court has recognized that absolute immunity comes at a cost. "To be sure, this immunity does leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler,* 424 U.S. at 427. Thus, "'the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.'" *Id.* at 428

12

(quoting *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949) (Hand, J.)). In short, "[a]bsolute immunity is . . . necessary to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou,* 438 U.S. 478, 512 (1978).

While the Supreme Court has not considered under what circumstances individuals working in the field of child protection and advocacy are entitled to absolute immunity, the Seventh Circuit Court of Appeals discussed the issue squarely in *Millspaugh v. County Dep't of Public Welfare of Wabash County,* 937 F.2d 1172, 1176 (7th Cir. 1991). In *Millspaugh,* the Seventh Circuit considered allegations that a social worker pursued custody proceedings involving the plaintiffs' children simply because she disliked the plaintiffs' religion, failed to furnish the court with material that would have been favorable to the plaintiffs during the custody proceedings, and neglected to ensure that the plaintiffs received adequate notice of the custody hearings. *Id.* at 1175. The plaintiffs argued that even though the social worker's actions occurred in connection with judicial proceedings, the actions were so clearly unlawful that absolute immunity should not apply. The Seventh Circuit disagreed, holding that "immunity that applies only when the defendant did no wrong is no immunity at all." *Id.* The court further held that "[the social worker's] motives in asking the court to do certain things, and her selection of evidence to present, lie at the core of the subjects to which absolute immunity applies." *Id.* The court reasoned that even assuming that the social worker

13

acted out of improper motives and misled the court, "social workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court." *Id.* at 1176.

In this case, plaintiffs allege that Whiteley submitted a report containing false information to the state court in order to effectuate the removal of plaintiffs' children from their home. (DE # 33 ¶ 5.) Absolute immunity clearly protects Whiteley from a lawsuit based on this alleged act, as the alleged conduct is "intimately associated with the judicial process," *Imbler,* 424 U.S. at 430, and involves his "testimony and other steps taken to present the case for decision by the court." *Millspaugh,* 937 F.2d at 1176; *see also Briscoe,* 460 U.S. at 341 (witnesses are immune for civil damages based upon their testimony). Whiteley is protected by absolute immunity for this alleged action, despite the fact that he is alleged to have misled the court and/or possessed improper motives. *Millspaugh,* 937 F.2d at 1176. Accordingly, Whiteley is entitled to summary judgment on plaintiffs' constitutional claims against him in his individual capacity.[4]

---

[4] Defendant Whiteley also argues that Indiana law provides him with immunity from state law claims due to his status as an employee of the Department of Child Services. It does not appear that plaintiffs are actually suing for violations of any state laws. Were they do to so, however, it seems Whiteley would be correct. IND. CODE § 31-25-2-2.5 ("The following are not personally liable, except to the state, for an official act done or committed in connection with performance of duties under this title: (1) The director of the department. (2) Other officers and employees of the department."); *Massenburg v. Richardson,* No. 3:09-CV-136, 2011 WL 294843, at *5 (N.D. Ind. Jan. 25, 2011) (granting statutory immunity to DCS employee with regard to state law claims).

## IV.   CONCLUSION

For the foregoing reasons, Parkview and the State Defendants' motions for summary judgment are **GRANTED**. (DE ##  36, 68.) The State Defendants' motion for judgment on the pleadings (DE # 46) is **DENIED** as duplicative, and Parkview's motion to strike (DE # 80) is **DENIED** as moot. The court's holding today does not necessarily mean that these defendants are exonerated, but only that plaintiffs cannot pursue federal constitutional claims against them in federal court. There being no claims remaining against any defendants in this case, the clerk is directed to **ENTER FINAL JUDGMENT** as follows:

> Judgment is entered in favor of defendants Parkview Hospital, Inc., a/k/a Parkview Hospital; Daniel A. Whiteley (in his individual capacity); and the Department of Child Services (in its official capacity); and against plaintiffs Robert Boyko and Marian Clark, who shall take nothing by way of their complaint.

### SO ORDERED.

Date: August 14, 2012

s/James T. Moody_____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT